## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| 1030 15th Street NW, B255 | ) | |
| Washington, DC 20005, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-3699 |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| 245 Murray Lane SW | ) | |
| Washington, DC 20528, | ) | |
| | ) | |
| | ) | |
| KRISTI NOEM, in her official capacity as | ) | |
| Secretary of the U.S. Department of Homeland | ) | |
| Security | ) | |
| 2707 Martin Luther King Jr. Ave. SE | ) | |
| Washington, DC 20528-0525, | ) | |
| | ) | |
| | ) | |
| MARCO A. RUBIO, in his official capacity as | ) | |
| Acting Archivist of the United States, | ) | |
| 2201 C St. NW | ) | |
| Washington, DC 20520, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL ARCHIVES AND RECORDS | ) | |
| ADMINISTRATION, | ) | |
| 700 Pennsylvania Ave. NW | ) | |
| Washington, DC 20408, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.     This case concerns a clear and urgent threat to the preservation, recovery, and availability to the public of federal records that the U.S. Department of Homeland Security ("DHS") must preserve and maintain pursuant to both the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq*., and the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101 *et seq*.

2.     The case turns on two relatively new DHS policies and practices, both of which DHS has stated in writing, both of which violate federal law. First, according to DHS, the agency no longer maintains text message data generated after April 9, 2025. Second, according to DHS, the agency has eliminated or removed its own ability to search for text messages at all.

3.     The first policy at issue is DHS's statement that "text message data generated after April 9, 2025, is no longer maintained."

4.     On information and belief, by "text message data," DHS means both the primary content of a text message, and the metadata of the message such as the sender, recipient, and date.

5.     DHS's failure to maintain text message data pertaining to official government business violates the FRA.

6.     Plaintiff American Oversight promptly notified Defendants Noem, Rubio, and NARA of DHS's inadequate record-keeping policy and requested they each take their respective statutorily required actions to recover all unlawfully destroyed records. Upon information and belief, they have failed to do so.

7.     Defendants have failed to comply with their statutory obligations under the FRA.

8.     The second policy at issue is DHS's stated policy and practice, effective no later than August 21, 2025, that "DHS no longer has the capability to conduct a search of text messages."

9.     Upon information and belief, DHS's statement that it "no longer has the capability to conduct a search of text messages" reflects a claim that personnel in DHS's FOIA Office are not capable of searching for text messages or text message data on official DHS recordkeeping systems.

10.    DHS's policy or practice of rendering itself unable to search for text messages violates the FOIA.

11.    Upon information and belief, DHS refuses to require individual records custodians to search devices in their possession for text messages responsive to FOIA requests.

12.    DHS's refusal, or self-created inability, to search for text messages generated after April 9, 2025, that are responsive to Plaintiffs' FOIA requests—whether that search is conducted by the FOIA Office or by individual records custodians—violates the FOIA.

13.    DHS's refusal, or self-created inability, to search for records reflecting text messages generated after April 9, 2025, that are responsive to Plaintiff's FOIA requests—whether that search is conducted by the FOIA Office or by individual records custodians—amounts to an unlawful withholding of those records in violation of the FOIA.

14.    Defendant DHS's policy and practice of not searching for text messages generated after April 9, 2025, violates the FOIA.

15.    Plaintiff American Oversight brings this action under the FRA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to prevent further unlawful destruction of federal records and to compel Defendants to fulfill their legal obligations to preserve and recover all federal records created and exchanged via text message.

16.    Plaintiff also brings this action under the FOIA and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel

compliance with the requirements of the FOIA in connection with Plaintiff's FOIA requests to DHS.

## JURISDICTION AND VENUE

17.    This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701 *et seq.*, the FRA, 44 U.S.C. §§ 3101 *et seq.*, the FOIA, 5 U.S.C. § 552, and the DJA, 28 U.S.C. §§ 2201 and 2202.

18.    This Court also has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

19.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 552(a)(4)(B).

20.    Defendants have failed to comply with the applicable time-limit provisions of the FOIA.

21.    American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold department or agency records and ordering the production of department or agency records improperly withheld.

## PARTIES

22.    Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. Plaintiff is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests made under the FOIA, American Oversight uses the information it

gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases and other media.

23.     In the regular course of its work and in furtherance of its core mission and function, American Oversight has submitted FOIA requests to Defendant DHS and its components, and will continue to seek records from those agencies in the future.

24.      In the regular course of its work and in furtherance of its core mission and function, American Oversight has released to the public records it received in response to FOIA requests to Defendants DHS and its components in the past. In the regular course of its work and in furtherance of its core mission and function, American Oversight will continue to release records to the public that it receives in response to FOIA requests to Defendants DHS and its components.

25.     Defendant DHS is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), APA, 5 U.S.C. § 701(b)(1), and FOIA, 5 U.S.C. § 552(f)(1). The DHS Privacy Office coordinates responses to FOIA requests for DHS.

26.     DHS has possession, custody, or control of records that American Oversight seeks in the FOIA requests refenced below.

27.     Defendant Kristi Noem is the Secretary of Homeland Security, sued in her official capacity. In that capacity, she is DHS's agency head and is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106(a), and 3303.

28.     Defendant Marco Rubio is the Acting Archivist of the United States, sued in his official capacity. As Acting Archivist of the United States, Defendant Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 2905(a), 3106(b).

29.     Defendant National Archives and Records Administration ("NARA") is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. § 701(b)(1), and is headquartered in Washington, D.C.

## FACTS

30.     Over the last six months, Plaintiff has sent multiple FOIA requests to DHS, described in the following paragraphs and hereinafter collectively referred to as "American Oversight's FOIA Requests," seeking (among other records) copies of text messages and records reflecting text messages regarding official government business.

*American Oversight's FOIA Requests*

<u>L.A. National Guard Request</u>

31.     On July 2, 2025, Plaintiff submitted a FOIA request to DHS bearing internal tracking number DHS-25-1645, seeking the following records from June 10, 2025, through June 17, 2025:

1.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>between</u> (a) any of the officials listed below, and/or anyone communicating on their behalf, such as a chief of staff, secretary, assistant, advisor, or scheduler, <u>and</u> (b) any of the external entities listed below (including listed domains).

    <u>Department of Homeland Security Officials</u>:
    i.    Kristi Noem, Secretary
    ii.   Troy Edgar, Deputy Secretary
    iii.  Andrew Whitaker, Executive Secretary
    iv.   Joseph Mazzara, Acting General Counsel
    v.    Rob Law, Senior Advisor
    vi.   Tony Pham, Senior Advisor
    vii.  Philip Hegseth, Senior Advisor
    viii. Corey Lewandowski, Special Government Employee

ix. Anyone serving as Chief of Staff

<u>External Entities</u>:
a. Los Angeles Mayor's Office (lacity.org)
b. City of Paramount, California (paramountcity.com)
c. California Governor's Office (gov.ca.gov)
d. White House Office (who.eop.gov)

Please note that American Oversight does not seek, and that part 1 of this request specifically excludes, the initial mailing of news clips or other mass-distribution emails. However, subsequent communications responding to or forwarding such emails are responsive to this request. For example, if a specified official received a mass-distribution news clip email from an email ending in lacity.org, that initial email would not be responsive to this request. However, if that specified official forwarded that email to another individual with their own commentary, that subsequent message would be responsive to this request and should be produced.

2. All text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, Mattermost, Wickr, WhatsApp, Telegram, or Parler) <u>between</u> (a) any of the officials listed above in part 1 and (b) any of the external individuals or entities listed below.

<u>External Entities and Individuals</u>:
a. Anyone communicating from the White House Office
b. Anyone communicating from the California Governor's Office
c. Gavin Newsom
d. Nathan Barankin
e. Thomas "Tom" Homan

American Oversight requests that full text message threads/conversations be produced.

American Oversight is not in a position to provide a phone number for the listed individuals. To the extent that the official is unable to provide them, please use the individuals' names as search terms. For example, a search for text messages between an official and Gavin Newsom would be conducted by searching the official's text messages using the key terms "Gavin," "Newsom," and "Gavin Newsom" to identify potentially responsive records.

3. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the officials above in part 1 <u>and</u> containing any of the key terms listed below.

Key Terms:

| | |
|---|---|
| a. Cal | l. protestor |
| b. California | m. protestors |
| c. CA | n. antifa |
| d. CMD | o. rebellion |
| e. CNG | p. insurrection |
| f. CAARNG | q. "Posse Comitatus" |
| g. Marine | r. "Los Angeles" |
| h. Marines | s. LA |
| i. USMC | t. Bass |
| j. anti-ICE | u. Newsom |
| k. protest | v. Newscum |

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 3 of this request to emails <u>sent</u> by the officials listed above in part 1. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

4. All text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Mattermost, Wickr, or Parler) <u>sent or received</u> by any of the officials listed above in part 1 and containing any of the key terms listed above in part 3.

For text messages or messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent or received a text message containing any of the key terms listed above, the complete thread/conversation for the timeframe listed above should be produced, and not just the message containing the key term.

32. By letter dated July 23, 2025, DHS notified American Oversight that it had received the July 2 FOIA request (hereinafter, "L.A. National Guard Request") and assigned it tracking number 2025-HQFO-05367. A true and correct copy of that letter is attached as Exhibit A, and American Oversight incorporates Exhibit A by reference as though stated fully herein.

33.     With respect to parts two and four of the L.A. National Guard Request, DHS stated that its "Privacy Office is unable to conduct a search of text messages, as text message data generated after April 9, 2025, is no longer maintained." Ex. A at 3.

34.     DHS also stated that it "will invoke a 10-day extension for [Plaintiff's] request pursuant to 6 C.F.R. Part 5 § 5.5(c)." Ex. A at 3.

35.     DHS failed to show in its response any legally permissible justification for exceeding the statutory twenty (20) working day deadline by which an agency must notify a FOIA requester of the agency's determination regarding what responsive records will be produced and, if any are to be withheld, which statutory exemptions justify those withholdings.

36.     As of this filing, DHS has not provided Plaintiff with any further communication concerning the L.A. National Guard Request.

37.     As of this filing, DHS has not produced any records responsive to the L.A. National Guard Request.

38.     As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding any part of the L.A. National Guard Request.

<u>Everglades Detention Center Request</u>

39.     On July 31, 2025, Plaintiff submitted a second FOIA request to DHS bearing internal tracking number DHS-25-1864, seeking the following records from June 1, 2025, through the date the search is conducted:

1.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Department of Homeland Security officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, <u>and</u> containing any of the key terms listed below.

    <u>Department of Homeland Security Officials</u>:
    i.   Kristi Noem, Secretary

    ii.    Troy Edgar, Deputy Secretary
   iii.    Andrew Whitaker, Executive Secretary
   iv.    Joseph Mazzara, Acting General Counsel
    v.    Rob Law, Senior Advisor
   vi.    Tony Pham, Senior Advisor
  vii.    Philip Hegseth, Senior Advisor
 viii.    Corey Lewandowski, Special Government Employee
   ix.    Anyone serving as Chief of Staff

<u>Key Terms</u>:
a.  alligator
b.  gator
c.  Alcatraz
d.  Everglades
e.  "eminent domain"

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails <u>sent</u> by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2.  All text messages (including complete text message threads or conversations) or messages on messaging platforms (such as Signal, Slack, Mattermost, Wickr, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) <u>sent or received</u> by any of the Department of Homeland Security officials listed above in part 1 <u>and</u> containing any of the key terms listed below.

<u>Key Terms</u>:
a.  alligator
b.  gator
c.  Alcatraz
d.  Everglades
e.  "eminent domain"

For text messages or messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent or received a text message containing any of the key terms listed above, the complete thread/conversation for the timeframe listed below should be produced, and not just the message containing the key term.

40.    By letter dated August 5, 2025, DHS notified American Oversight that it had

received the July 31 FOIA request (hereinafter, "Everglades Detention Center Request") and assigned it tracking number 2025-HQFO-05730. A true and correct copy of that letter is attached as Exhibit B, and American Oversight incorporates Exhibit B by reference as though stated fully herein.

41.    With respect to part two of the Everglades Detention Center Request, DHS stated that its "Privacy Office is unable to conduct a search of text messages beyond April 9, 2025, as text message data generated after that date is no longer maintained." Ex. B at 2.

42.    DHS also stated that it "will invoke a 10-day extension for [Plaintiff's] request pursuant to 6 C.F.R. Part 5 § 5.5(c)." Ex. B at 2.

43.    DHS failed to show in its response any legally permissible justification for exceeding the statutory twenty (20) working day deadline by which an agency must notify a FOIA requester of the agency's determination regarding what responsive records will be produced and, if any are to be withheld, which statutory exemptions justify those withholdings.

44.    Plaintiff promptly responded on August 6, 2025, asking DHS to (a) explain its statement that text message data was no longer being maintained, and (b) require custodians listed in part one of the Everglades Detention Center Request to conduct searches of their devices for responsive records for the five key terms requested. *See* Ex. F at 16; Ex. G at 17.

45.    As of this filing, DHS has not provided Plaintiff with any further communication concerning the Everglades Detention Center Request.

46.    As of this filing, DHS has not produced any records responsive to the Everglades Detention Center Request.

47.    As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding any part of the Everglades Detention Center Request.

<u>July Texts Request and July Retained Texts Request</u>

48.     On August 21, 2025, Plaintiff submitted two more FOIA requests to DHS. One of the requests, bearing internal tracking number DHS-25-2073 (hereinafter, "July Texts Request"), sought the following records from July 1, 2025, through July 31, 2025:

> All text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Parler, Mattermost, Wickr, TeleMessage, TM SGNL, or any app that can interface with an app such as those listed or otherwise borrow its technology) <u>sent or received by</u> the DHS officials listed below regarding official government business.
>
> <u>Department of Homeland Security Officials:</u>
> i.      Kristi Noem, Secretary
> ii.     Troy Edgar, Deputy Secretary
> iii.    Andrew Whitaker, Executive Secretary
> iv.     Joseph Mazzara, Acting General Counsel
> v.      Rob Law, Senior Advisor
> vi.     Tony Pham, Senior Advisor
> vii.    Philip Hegseth, Senior Advisor
> viii.   Corey Lewandowski, Special Government Employee
> ix.     Anyone serving as Chief of Staff
>
> American Oversight requests that all images, videos, audio recordings, or other attachments regarding official government business shared via text message or messaging platforms be produced in response to this request.

49.     Plaintiff's additional August 21 request to DHS, bearing internal tracking number DHS-24-2072 (hereinafter, "July Retained Texts Request"), sought the following records from July 1, 2025, through July 31, 2025:

> Records reflecting all text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Parler, Mattermost, Wickr, TeleMessage, TM SGNL, or any app that can interface with an app such as those listed or otherwise borrow its technology) <u>sent or received by</u> the DHS officials listed below regarding official government business, and subsequently captured, retained, or preserved on official DHS systems.

Capturing, retaining, and/or preserving messages includes, but is not limited to, any messages forwarded, copied and pasted, screenshotted, or otherwise documented on DHS systems in another form.

    <u>Department of Homeland Security Officials</u>:
    i.  Kristi Noem, Secretary
    ii.  Troy Edgar, Deputy Secretary
    iii.  Andrew Whitaker, Executive Secretary
    iv.  Joseph Mazzara, Acting General Counsel
    v.  Rob Law, Senior Advisor
    vi.  Tony Pham, Senior Advisor
    vii.  Philip Hegseth, Senior Advisor
    viii.  Corey Lewandowski, Special Government Employee
    ix.  Anyone serving as Chief of Staff

American Oversight requests that all images, videos, audio recordings, or other attachments regarding official government business shared via text message or messaging platforms and subsequently preserved on official DHS systems be produced in response to this request.

50.     On the same day, August 21, 2025, in separate responses to the July Texts Request (to which DHS assigned tracking number 2025-HQFO-05952) and the July Retained Texts Request (to which DHS assigned tracking number 2025-HQFO-05951), DHS notified Plaintiff that it was "unable to locate or identify any responsive records, as DHS no longer has the capability to conduct a search of text messages." Ex. C at 1; Ex. D at 1.

51.     True and correct copies of both of DHS's August 21 responses are attached as Exhibits C and D, and American Oversight incorporates Exhibits C and D by reference as though stated fully herein.

52.     On August 25, 2025, Plaintiff administratively appealed DHS's responses to the July Texts Request and the July Retained Texts Request.

53.     DHS granted both appeals on September 17, 2025.

54.     As of this filing, DHS has not provided Plaintiff with any further communication concerning the July Texts Request.

55.     As of this filing, DHS has not provided Plaintiff with any further communication concerning the July Retained Texts Request.

56.     As of this filing, DHS has not produced any records responsive to the July Texts Request.

57.     As of this filing, DHS has not produced any records responsive to the July Retained Texts Request.

58.     As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding the July Texts Request.

59.     As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding the July Retained Texts Request.

<u>Memos to File Request, August Retained Texts Request, and Post-April 9 Texts Request</u>

60.     On September 5, 2025, Plaintiff submitted three more FOIA requests to DHS. One of the requests, bearing internal tracking number DHS-25-2145 (hereinafter the "Memos to File Request") sought the following records from April 10, 2025, through September 4, 2025:

> All "memos to file" reflecting the content of text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Parler, Mattermost, Wickr, TeleMessage, TM SGNL, or any app that can interface with an app such as those listed or otherwise borrow its technology) <u>sent or received by</u> the DHS officials listed below.
>
> <u>Department of Homeland Security Officials</u>:
> i.     Kristi Noem, Secretary
> ii.    Troy Edgar, Deputy Secretary
> iii.   Andrew Whitaker, Executive Secretary
> iv.    Joseph Mazzara, Acting General Counsel
> v.     Rob Law, Senior Advisor
> vi.    Tony Pham, Senior Advisor
> vii.   Philip Hegseth, Senior Advisor
> viii.  Corey Lewandowski, Special Government Employee
> ix.    Anyone serving as Chief of Staff

American Oversight requests that all images, videos, audio recordings, or other attachments regarding official government business shared via text message or messaging platforms and subsequently preserved or referenced within a "memo to file" regarding any such messages be produced in response to this request.

61.     According to DHS Policy Directive 141-03, the "best way" to capture electronic messages such as texts and messages from non-governmental messaging platforms is by creating a "memo to file."[1]

62.     Plaintiff's Memos to File Request stated that it was seeking "memos to file" reflecting text message data, regardless of whether the memos were created because of or in compliance with Policy Directive 141-03.

63.     Plaintiff's second September 5 request to DHS, bearing internal tracking number DHS-25-2135 (hereinafter, "August Retained Texts Request"), sought the following records from August 1 through August 31, 2025:

Records reflecting all text messages and messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Parler, Mattermost, Wickr, TeleMessage, TM SGNL, or any app that can interface with an app such as those listed or otherwise borrow its technology) sent or received by the DHS officials listed below regarding official government business, and subsequently captured, retained, or preserved on official DHS systems.

Capturing, retaining, and/or preserving messages includes, but is not limited to, any messages forwarded, copied and pasted, screenshotted, documented in a memo to file, or otherwise documented in another form.

Department of Homeland Security Officials:
  i.   Kristi Noem, Secretary
  ii.  Troy Edgar, Deputy Secretary
  iii. Andrew Whitaker, Executive Secretary
  iv.  Joseph Mazzara, Acting General Counsel
  v.   Rob Law, Senior Advisor
  vi.  Tony Pham, Senior Advisor

---

[1] Claire M. Grady, Under Secretary of Management, DHS, *Electronic Records Management Updates for Chat, Text, and Instant Messaging*, DHS Policy Directive 141-03, at 2, Feb. 23, 2018, *available at* https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-directive.pdf.

vii.   Philip Hegseth, Senior Advisor
viii.  Corey Lewandowski, Special Government Employee
ix.   Anyone serving as Chief of Staff

American Oversight requests that all images, videos, audio recordings, and other attachments regarding official government business shared via text message or messaging platforms and subsequently preserved on official DHS systems be produced in response to this request.

64.     Plaintiff's third September 5 request to DHS, bearing internal tracking number

DHS-25-2139 (hereinafter, "Post-April 9 Texts Request"), sought the following from April 10,

2025, through August 31, 2025:

All text messages (including complete text message threads or conversations) and messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, Parler, Mattermost, Wickr, TeleMessage, TM SGNL, or any app that can interface with an app such as those listed or otherwise borrow its technology) sent or received by any of the DHS officials listed below and containing any of the key terms listed below.

Department of Homeland Security Officials:
i.   Roman Jankowski, Chief Privacy Officer and Chief Freedom of Information Officer
ii.  James Holzer, Deputy Chief Privacy Officer
iii. Catrina Pavlik-Keenan, Deputy Chief Freedom of Information Act Officer
iv.  Jimmy Wolfrey, Senior Director, FOIA Operations and Management
v.   Eric Neuschaefer, Senior Director, FOIA Litigation and Policy
vi.  Korrina Stewart, Acting Public Liaison, Privacy Office
vii. Anyone serving as Chief of Staff or Senior Advisor to the Chief Privacy Officer or Chief Freedom of Information Officer

Key Terms:
a.  Signal
b.  Signalgate
c.  WhatsApp
d.  "Whats App"
e.  TeleMessage
f.  "Tele Message"
g.  TMSGNL
h.  "TM SGNL"
i.  text
j.  texts
k.  "Alien Enemies"

l.  "Alien Enemy"
m.  AEA
n.  CECOT
o.  Bukele
p.  TdA
q.  "Tren de Aragua"
r.  "court order"
s.  Bove
t.  Kilmar
u.  Abrego
v.  KAG

| | |
|---|---|
| w. JGG | aa. TRO |
| x. J.G.G. | bb. "restraining order" |
| y. "El Salvador" | cc. "minute order" |
| z. "administrative error" | |

For text messages and messages on other messaging platforms, American Oversight requests that full text message threads/conversations be produced. For example, if an official sent or received a text message containing any of the key terms listed above, the complete thread/conversation for the timeframe listed below should be produced, and not just the message containing the key term.

65.     Via email message on September 8, 2025, DHS notified Plaintiff that it had received the Post-April 9 Texts Request, assigned it tracking number 2025-HQFO-06111, and stated that the request "seeks documents that will require a thorough and wide-ranging search," and that therefore "DHS will invoke a 10-day extension pursuant to 6 C.F.R. Part 5 § 5.5(c)."

66.     DHS's September 8 email concerning the Post-April 9 Texts Request did not provide any legally permissible justification for exceeding the statutory twenty (20) working day deadline by which an agency must notify a FOIA requester of the agency's determination regarding what responsive records will be produced and, if any are to be withheld, which statutory exemptions justify those withholdings.

67.     By letter dated September 17, 2025, DHS notified Plaintiff that the August Retained Texts Request, to which DHS assigned tracking number 2025-HQFO-06107, "seeks documents that will require a thorough and wide-ranging search," and that therefore "DHS will invoke a 10-day extension pursuant to 6 C.F.R. Part 5 § 5.5(c)."

68.     DHS's September 17 letter concerning the August Retained Texts Request did not provide any legally permissible justification for exceeding the statutory twenty (20) working day deadline by which an agency must notify a FOIA requester of the agency's determination regarding what responsive records will be produced and, if any are to be withheld, which statutory exemptions justify those withholdings.

69.     By letter dated September 24, 2025, DHS notified Plaintiff that, for the Memos to File Request, to which DHS assigned tracking number 2025-HQFO-06105, it had "conducted a comprehensive search" for records responsive to but was "unable to locate or identify any responsive records." Ex. E.

70.     A true and correct copy of DHS's September 24 response is attached as Exhibit E, and American Oversight incorporates Exhibit E by reference as though stated fully herein.

71.     As of this filing, DHS has not provided Plaintiff with any further communication concerning the August Retained Texts Request.

72.     As of this filing, DHS has not produced any records responsive to the August Retained Texts Request.

73.     As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding the August Retained Texts Request.

74.     As of this filing, DHS has not provided Plaintiff with any further communication concerning the Post-April 9 Texts Request.

75.     As of this filing, DHS has not produced any records responsive to the Post-April 9 Texts Request.

76.     As of this filing, DHS has not provided Plaintiff with a FOIA determination regarding the Post-April 9 Texts Request.

<u>Additional American Oversight Requests</u>
<u>Seeking Records Regarding Text Messages</u>[2]

77.     In addition to the above-described FOIA requests, since May 1, 2025, Plaintiff has submitted to DHS an additional seven (7) FOIA requests for text messages and records

---

[2] Plaintiff is not seeking, in this action, release of responsive records to the FOIA requests described in paragraphs 78 through 83.

reflecting text messages, as described in below paragraphs 78 through 83, to which DHS has provided no FOIA determination or responsive records.

78.     On May 1, 2025, Plaintiff submitted a FOIA request to DHS which seeks, in part 3, all text messages sent or received by Secretary of Defense Pete Hegseth's brother, Philip Hegseth, who is DHS's liaison and senior advisor at the Pentagon,[3] from January 20, 2025, through the date the search is conducted.

79.     On May 16, 2025, Plaintiff submitted a FOIA request to DHS which seeks all records reflecting communications, including text messages, between certain DHS officials and anyone in the White House Office and containing any of six listed key terms, from June 5, 2025, through the date the search is conducted.

80.     On June 10, 2025, Plaintiff submitted two other FOIA request to DHS: one seeks, in part, all text messages sent or received by certain DHS officials and containing listed key terms; the other seeks, in part, all text messages between certain DHS officials and certain external individuals from June 5, 2025, through June 9, 2025.[4]

81.     On June 12, 2025, Plaintiff submitted a FOIA request to DHS seeking, in part, all records reflecting communications (including text messages) sent by certain DHS officials from June 7, 2025, through the date the search is conducted regarding President Donald Trump's statements on the use of force at the June 14, 2025 military parade.

---

[3] Tara Copp, *Hegseth's Younger Brother Is Serving in a Key Role as Liaison and Senior Adviser Inside the Pentagon,* Assoc. Press (Mar. 28, 2025), https://apnews.com/article/hegseth-brother-signal-dhs-hired-68678a8a653c79a4c6ae31a8bee64836.

[4] On the latter of these requests, Plaintiff received a final determination on July 7, 2025, in which DHS stated it is "unable to locate or identify any responsive records." Plaintiff's appeal of this final determination is pending.

82.     On June 17, 2025, Plaintiff submitted a FOIA request to DHS seeking, in part, all text messages from January 20, 2025, through the date of search, exchanged between Steven Davis and anyone serving in the role of DHS's DOGE team lead, DOGE Advisor, DOGE staffer, DOGE detailee, or on DHS's DOGE team.

83.     On August 12, 2025, Plaintiff submitted a FOIA request to DHS seeking, in part, all text messages from May 1, 2025, through the date of search, sent or received by certain DHS officials and containing any of the listed key terms pertaining to the removal of immigrants to South Sudan.

*DHS's Inadequate Record-Keeping Policy*

84.     Texts and other electronic messages regarding official government business that are sent or received by the Secretary of DHS and other DHS principals and deputies must be preserved.

85.     Under a policy it enacted in 2018, DHS required "DHS employees [to] take appropriate steps to establish and maintain a separate record" of "business communications created and transmitted between [DHS] employees that include substantive information about agency business, policies, and activities made via chat, text, or instant message."[5]

86.     In 2023, DHS committed to manage and dispose of all such electronic messages according to the General Records Schedule ("GRS") 6.1, under which electronic business communications, including "messages from messaging services provided on mobile devices," and "messages from messaging services on third party applications" (hereinafter collectively

---

[5] DHS Policy Directive 141-03, *Electronic Records Management Updates for Chat, Text, and Instant Messaging*, *supra* n.1, at 1.

referred to as "text messages"), of the DHS Secretary and other senior DHS officials are permanently retained and eventually transferred from DHS to NARA.[6]

87.    NARA approved DHS's electronic messages policy described in paragraph 86, on August 7, 2025.[7]

88.    DHS stopped maintaining text messages generated after April 9, 2025.

89.    DHS stopped maintaining text message data generated after April 9, 2025.

90.     DHS employees, including the Secretary and other senior officials, stopped retaining business communications transmitted via text message after DHS received FOIA requests for those messages.

91.    DHS's policy or practice of not maintaining text message data generated after April 9, 2025, has not been approved by NARA.

92.    DHS does not possess any "memos to file" generated or dated between April 10, 2025, and September 4, 2025, that reflect the content of text messages or messages on messaging platforms sent or received by any of the following officials:

a.   Kristi Noem, Secretary
b.   Troy Edgar, Deputy Secretary
c.   Andrew Whitaker, Executive Secretary
d.   Joseph Mazzara, Acting General Counsel
e.   Rob Law, Senior Advisor
f.   Tony Pham, Senior Advisor
g.   Philip Hegseth, Senior Advisor
h.   Corey Lewandowski, Special Government Employee
i.   Anyone serving as Chief of Staff

---

[6] *DHS Submission of Form NA-1005*, at 2,10, 20, Nat'l Archives Recs. Admin. (last accessed Oct. 17, 2025), https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-homeland-security/rg-0563/grs-6-1-0563-2023-0001-c.pdf. DHS states in its NA-1005 that "[a]ll positions represented on this form are using general chat / text features affiliated with DHS." *Id*. at 10. Positions listed include the Secretary and other senior officials. *See id*. at 11–23.

[7] *See id*. at 2.

93.    The DHS officials listed in the above paragraph 92 have not captured text messages sent or received by them after April 9, 2025 in "memos to file."

94.    Upon information and belief, at least one of the DHS officials listed in paragraph 92 has sent or received text messages generated since April 9, 2025, that are "records" subject to the FRA.

95.    Upon information and belief, at least one of the DHS officials listed in paragraph 92 has sent or received text messages generated since April 9, 2025, that are "agency records" subject to the FOIA.

96.    Upon information and belief, text messages sent or received after April 9, 2025, by the DHS officials listed in paragraph 92 have not been captured in any DHS system.

97.    By letter dated August 28, 2025, Plaintiff notified Defendants Rubio and NARA of the potential unlawful destruction or removal of federal records potentially responsive to Plaintiff's Everglades Detention Center Request, July Texts Request and July Retained Texts Request, and asked Defendant Rubio to take immediate action to recover those records and prevent their further removal and destruction. *See* Ex. F.

98.    A true and correct copy of Plaintiff's August 28 letter to Defendants Rubio and NARA is attached as Exhibit F, and American Oversight incorporates Exhibit F by reference as though stated fully herein.

99.    Plaintiff's August 28 letter also asked Defendant Rubio to undertake an enforcement action through the Attorney General to ensure DHS texts and messages from all relevant messaging platforms are properly preserved so they may be accessed by the public.

100.    By another letter dated August 28, 2025, Plaintiff notified Defendant Noem of the potential unlawful destruction or removal of federal records potentially responsive to Plaintiff's

Everglades Detention Center Request, July Texts Request and July Retained Texts Request, and asked her to take immediate action to recover the records and prevent their further removal and destruction. *See* Ex. G.

101.    A true and correct copy of Plaintiff's August 28 letter to Defendant Noem is attached as Exhibit G, and American Oversight incorporates Exhibit G by reference as though stated fully herein.

102.    Plaintiff's August 28 letter to Defendant Noem also asks her to notify the Archivist of "any actual, impending, or threatened" unlawful removal, alteration, or destruction of federal records and initiate an enforcement action through the Attorney General to ensure DHS texts and messages from all relevant messaging platforms are properly preserved so they may be accessed by the public.

103.    On August 28, 2025, NARA provided an automated response to Plaintiff's August 28, 2025 letter, reading in full:

> EXTERNAL SENDER
>
> Thank you for reaching out to the National Archives and Records Administration (NARA) Records Management Oversight and Reporting Program. We have received your message.
>
> For information about open and closed unauthorized disposition cases, please visit NARA's unauthorized disposition webpage through the link below. NARA appreciates your commitment to proper records management.
>
> Respectfully,
>
> NARA's Records Management Oversight and Reporting Program
>
> NARA's Unauthorized Disposition Webpage:
> https://www.archives.gov/records-mgmt/resources/unauthorizeddispositionoffederalrecords

Ex. H.

104.    A true and correct copy of NARA's confirmation of receipt of Plaintiff's August 28 letter is attached as Exhibit H, and American Oversight incorporates Exhibit H by reference as though stated fully herein.

105.    Since NARA's automated August 28 response, neither NARA nor Defendant Rubio have communicated further with Plaintiff concerning Plaintiff's August 28 letter.

106.    As of the date of this complaint, NARA's Unauthorized Disposition Webpage does not list a case for unauthorized disposition of text messages at DHS. *See* NARA, "Unauthorized Disposition of Federal Records," https://www.archives.gov/records-mgmt/resources/unauthorizeddispositionoffederalrecords#Homeland%20Security (last visited Oct. 17, 2025).

107.    Defendants Noem and DHS have provided no response to Plaintiff's August 28, 2025 letter.

108.    In an August 29, 2025 letter, Ranking Member of the U.S. House of Representative's Committee on Homeland Security, Bennie Thompson, and Ranking Member of the Subcommittee on Oversight, Investigations, and Accountability, Shri Thanedar, asked Defendant Rubio to initiate an investigation into whether Defendant Noem and other senior DHS officials may have willfully destroyed federal records and not reported the destruction to NARA. A true and correct copy of that letter is attached as Exhibit I, and American Oversight incorporates Exhibit I by reference as though stated fully herein.

109.    Upon information and belief, Defendants Rubio and NARA have not taken steps to recover any text messages or text message data potentially responsive to American Oversight's FOIA Requests.

110.    Upon information and belief, Defendants Noem and DHS have not taken steps to recover any text messages or text message data potentially responsive to American Oversight's FOIA Requests.

111.    Upon information and belief, Defendants Noem and DHS did not provide public notice prior to the destruction or alienation of federal records consisting of text messages or text message data generated after April 9, 2025.

112.    Upon information and belief, neither Defendant Noem nor Defendant Rubio have initiated any enforcement action through the Attorney General for the unlawful removal or destruction of text message data generated after April 9, 2025.

*Exhaustion of Administrative Remedies*

113.    As of the date of this Complaint, Defendant DHS has failed to notify American Oversight of a final determination regarding American Oversight's FOIA Requests, including the scope of responsive records DHS intends to produce or withhold and the reasons for any withholdings.

114.    As of the date of this Complaint, Defendant DHS has failed to produce the requested records or demonstrate that the requested records are lawfully exempt from production.

115.    Through Defendant DHS's failure to respond to Plaintiff's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

## CLAIMS FOR RELIEF

**Count I – as to Defendants DHS and Noem**
**Failure to Implement Adequate Recordkeeping Program and**
**Failure to Safeguard Federal Records**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

111.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

112.    Defendants DHS and Noem know or reasonably should know that text messages and text message data related to official government business constitute "records" under the FRA.

113.    DHS stopped maintaining post-April 9, 2025 text messages that related to official government business.

114.    DHS stopped maintaining post-April 9, 2025 text message data that related to official government business.

115.    Defendants DHS and Noem know or reasonably should know that DHS's failure to maintain text message data generated after April 9, 2025, is an inadequate federal recordkeeping system under the FRA.

116.    Despite such knowledge, Defendants DHS and Noem have failed and continue to fail to develop and implement recordkeeping programs designed to preserve all text message data pertaining to official government business.

117.    To the extent Defendant DHS previously had in place recordkeeping programs that would have maintained and preserved text message data pertaining to official government business, its stated policy that "text message data generated after April 9, 2025, is no longer maintained" shows a modification of DHS's recordkeeping program that is inadequate to safeguard those federal records.

118.    Defendants DHS and Noem have thus failed to establish a records management program providing "effective control[] over the creation and over the maintenance and use of records," 44 U.S.C. § 3102(1), that "establish[es] safeguards against the removal or loss of records," *id.* § 3105.

119.    DHS's post-April 9, 2025 recordkeeping practice is inadequate, arbitrary, capricious, and otherwise not in accordance with the FRA.

120.    The failures and violations by Defendants DHS and Noem have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

121.    The failures to act by Defendants DHS and Noem constitute final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### Count II – as to Defendants DHS and Noem
### Failure to Initiate Enforcement and Recovery Actions Under 44 U.S.C. § 3106(a)
### (Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
### for declaratory and injunctive relief)

122.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

123.    Text messages, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id.* §§ 2904(c)(1), 3105.

124.    Federal records, including text messages, may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301–3314 (setting forth the steps for lawfully disposing of records).

125.    Defendants DHS and Noem know or reasonably should know that DHS's failure to maintain text messages and related data generated after April 9, 2025, violates the FRA and implementing rules and regulations of both DHS and NARA.

126.    Under 44 U.S.C. § 3106(a), "[t]he head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency."

127.    Defendants DHS and Noem have not performed their nondiscretionary duty under 44 U.S.C. § 3106(a) to notify the Archivist of actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency.

116.    Defendant Noem has not performed her nondiscretionary duty under 44 U.S.C. § 3106(a) to initiate action through the Attorney General for the recovery of records she knows or has reason to believe have been unlawfully removed from DHS.

117.    Defendant Noem has been made aware of the unlawfully alienated agency records at issue in this lawsuit.

128.    Defendants Noem and DHS have failed to perform their nondiscretionary duties to preserve and recover the unlawfully removed records.

129.    Defendants' failures and violations have injured the public and American Oversight by compromising federal records that may be responsive to American Oversight's pending and future FOIA requests, thereby increasing the likelihood that American Oversight will be unable to obtain responsive federal records now and in the future.

130.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count III – as to Defendants NARA and Acting Archivist Rubio
for Refusal to Take Enforcement Action Under 44 U.S.C. § 3106(b)
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief)**

131.    American Oversight repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

132.    Defendants NARA and Rubio knew or reasonably should have known that DHS business communications transmitted via text message after April 9, 2025, have been unlawfully lost, removed, or destroyed, and they therefore had a duty to initiate an enforcement action through the Attorney General so that the alienated records can be recovered. *See* 44 U.S.C. 3106(b).

133.    Defendants NARA and Rubio, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so to prevent the actual, threatened, or impending removal or destruction of records in the agency's custody. *See* 44 U.S.C. § 3106(b).

134. Defendants NARA and Rubio have been made aware of the unlawfully alienated agency records at issue in this lawsuit.

135. Defendant Rubio, as Acting Archivist, knows or reasonably should know that Defendants Noem and DHS failed to take appropriate action to preserve and recover text message data generated after April 9, 2025.

136. Defendant Rubio has failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Rubio are in default of their nondiscretionary obligations under the FRA.

137. This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

138. American Oversight and the public are harmed by Defendant Rubio's failure to seek the initiation of an enforcement action through the Attorney General, as this failure threatens to keep from public access important historical documents with administrative, legal, research, or other value.

### COUNT IV – as to Defendant DHS
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Searches for Responsive Records

139. American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

140. American Oversight properly requested records within Defendant DHS's possession, custody, and control.

141. Defendant DHS is an agency subject to FOIA and must therefore make reasonable

efforts to search for requested records.

142.    Defendant DHS has failed to promptly review agency records for the purpose of locating those records that are responsive to the L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request.

143.    Defendant DHS's failure to conduct adequate searches for responsive records violates FOIA and applicable regulations.

144.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendant DHS to promptly make reasonable efforts to search for records responsive to Plaintiff's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request.

### COUNT V – as to Defendant DHS
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

145.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

146.    American Oversight properly requested records within Defendant DHS's possession, custody, and control.

147.    Defendant DHS is an agency subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide lawful reasons for withholding any materials.

148.    Defendant DHS is wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to Plaintiff's L.A.

National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request.

149.    Defendant DHS's failure to provide all non-exempt responsive records violate FOIA and applicable regulations.

150.    Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendant DHS to promptly produce all non-exempt records responsive to American Oversight's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request, and provide indexes justifying withholdings of any responsive records withheld under claims of exemption.

**COUNT VI – as to Defendant DHS**
**Violation of FOIA, 5 U.S.C. § 552**
**Unlawful Policy or Practice of Not Searching Text Messages**

151.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

152.    American Oversight properly requested records within Defendant DHS's possession, custody, and control.

153.    Defendant DHS is an agency subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide lawful reasons for withholding any materials.

154.    Defendant DHS is required to conduct a search "reasonably calculated to uncover all relevant documents," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), in response to all proper FOIA requests. *See also Rodriguez v. U.S. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) ("It is axiomatic that an inadequate search for records

constitutes an improper withholding under FOIA." (internal quotations omitted)).

155.    Defendant DHS has responded to multiple American Oversight FOIA requests seeking text messages by claiming that it is now unable to search for text messages. *See* Exs. A, B, C, D.

156.    Defendant DHS has stated that it has surrendered, lost, or otherwise rendered itself incapable of searching for text messages. *See* Ex. C (DHS states it is "unable to locate or identify any responsive records, as DHS no longer has the capability to conduct a search of text messages").

157.    Upon information and belief, Defendant DHS has refused to require individual records custodians to search for text messages on devices in their possession.

158.    Defendant DHS has adopted, endorsed, or implemented a policy or practice of refusing to search for text messages or rendering itself incapable of searching for text messages.

159.    DHS's policy or practice of refusing to search, or rendering itself incapable of searching, for text messages means that its searches for records responsive to a FOIA request seeking text messages by definition cannot be "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325.

160.    American Oversight will suffer continuing injury due to this policy or practice because American Oversight will not be able to obtain DHS agency records subject to FOIA through its current and future FOIA requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Declare that text messages and text message data regarding official government business are federal records subject to the FRA and agency records subject to the FOIA;

2.      Declare that the failures by Defendants Noem and DHS to ensure such messages are preserved, as required by 44 U.S.C. § 2911, has led to the actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records under the FRA;

3.      Declare that DHS's policy of failing to maintain text messages and text message data generated after April 9, 2025, is arbitrary, capricious, and contrary to law;

4.      Declare that Defendants DHS and Noem have maintained inadequate recordkeeping systems for records generated after April 9, 2025, and such failure is arbitrary, capricious, and contrary to law;

5.      Order Defendants DHS and Noem to implement adequate recordkeeping programs to ensure compliance with the FRA;

6.      Declare that Defendants Noem, NARA, and Rubio have violated their respective duties under the FRA and APA;

7.      Order Defendant Noem to comply with her duties under the FRA and APA, by referring the matter to the Acting Archivist for enforcement of the FRA, preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed federal records;

8.      Order Defendants NARA and Rubio to comply with their respective duties under the FRA and APA, by referring the matter to the Attorney General for enforcement of the FRA, preservation of records, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed federal records;

9. Declare that Defendants NARA and Rubio have breached their statutory duty to take enforcement action to prevent Defendants DHS and Noem from destroying records in contravention of the FRA and to recover records that may have been destroyed or removed;

10. Order Defendants NARA and Rubio to fulfill their mandatory statutory duty to ask the Attorney General to initiate legal action as provided by 44 U.S.C. § 3106(b), with corresponding notice to Congress;

11. Declare that Defendant DHS's policy or practice of refusing to search, or rendering itself incapable of searching for, text messages or text message data violates the FOIA;

12. Issue preliminary relief ordering Defendants DHS and Noem to preserve all materials relating to Plaintiff's claims under the FRA and FOIA;

13. Order Defendant DHS to conduct a search reasonably calculated to uncover all records responsive to American Oversight's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request;

14. Order Defendant DHS to produce, within twenty days of the Court's order, all non-exempt records responsive to American Oversight's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request, and to provide *Vaughn* indexes of any responsive records withheld under claim of exemption;

15. Enjoin Defendant DHS from continuing to withhold any and all non-exempt records responsive to American Oversight's L.A. National Guard Request, Everglades Detention Center Request, July Texts Request, July Retained Texts Request, August Retained Texts Request, and Post-April 9 Texts Request;

16.     Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

17.     Grant Plaintiff any other relief this Court deems appropriate.


Dated: October 20, 2025                          Respectfully submitted,

                                                 /s/ *Elizabeth Haddix*
                                                 Elizabeth Haddix
                                                 D.C. Bar No. 90019750
                                                 Jessica Jensen
                                                 D.C. Bar No. 1048305
                                                 Daniel Martinez
                                                 D.C. Bar No. 90025922
                                                 AMERICAN OVERSIGHT
                                                 1030 15th Street NW, B255
                                                 Washington, DC 20005
                                                 (252) 359-7424
                                                 Elizabeth.haddix@americanoversight.org

                                                 *Counsel for Plaintiff*