# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,           )
1030 15th Street NW, B255      )
Washington, DC 20005,         )
                    )
            *Plaintiff,*     )
                    )
v.                    )     Case No. 1:25-cv-3699
                    )
U.S. DEPARTMENT OF HOMELAND  )
SECURITY,              )
245 Murray Lane SW        )
Washington, DC 20528,         )
                    )
                    )
KRISTI NOEM, in her official capacity as )
Secretary of Department of Homeland Security )
2707 Martin Luther King Jr. Ave. SE )
Washington, DC 20528-0525,   )
                    )
                    )
MARCO A. RUBIO, in his official capacity as )
Acting Archivist of the United States, )
2201 C St. NW          )
Washington, DC 20520,         )
                    )
and                  )
                    )
NATIONAL ARCHIVES AND RECORDS )
ADMINISTRATION,       )
700 Pennsylvania Ave. NW    )
Washington, DC 20408,        )
                    )
           *Defendants.*   )
                    )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRESERVATION ORDER AND PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 4

    I.    Legal Framework ................................................................................ 4

        A.    The Federal Records Act ................................................................ 4

        B.    DHS's Text Message Recordkeeping Policies .............................. 6

        C.    The Freedom of Information Act .................................................... 7

    II.    Factual and Procedural Background ................................................... 8

LEGAL STANDARD ........................................................................................ 12

ARGUMENT .................................................................................................... 13

    I.    Plaintiff Satisfies the Preliminary Relief Standard for a Preservation
        Order in Connection with its Freedom of Information Act Claims .......... 15

        A.    Plaintiff has shown a strong likelihood of success on the merits
            of its FOIA claims. ...................................................................... 16

        B.    Plaintiff has shown likely irreparable harm absent a
            Preservation Order. ...................................................................... 18

        C.    Plaintiff has shown that the balance of the equities and
            the public interest weigh in favor of a Preservation Order. .......... 19

    II.    Plaintiff is Entitled to a Preliminary Injunction for Its
        Federal Records Act Claims. .............................................................. 20

        A.    Plaintiff is likely to succeed on the merits of its FRA claims. ....... 20

            a. DHS and Noem have adopted a recordkeeping policy
            that is not in accordance with law and/or is arbitrary and
            capricious. ................................................................................. 20

            b. Noem, DHS, Rubio, and NARA have failed to enforce
            the FRA's provisions to prevent unlawful removal or destruction
            of federal records and recover federal records unlawfully removed
            or destroyed. .............................................................................. 24

            c. Defendants Rubio and NARA have failed to initiate enforcement
            action through the Attorney General. ........................................... 25

B.    Plaintiff will suffer irreparable harm absent preliminary relief.... 26

C.    The requested relief will not burden any valid governmental interests and is in the public's interest. .......................................... 27

CONCLUSION ............................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .................................................................................... 13

*Am. First Legal Found. v. Becerra*,
No. CV 24-1092 (RC), 2024 WL 3741402 (D.D.C. Aug. 9, 2024) ...................................... passim

*Am. First Legal Found. v. Kennedy*,
No. CV 24-1092 (RC), 2025 WL 1726025 (D.D.C. June 20, 2025) ............................................ 3

*Am. Oversight v. Hegseth*,
788 F. Supp. 3d 14 (D.D.C. 2025) .................................................................................. 4

*Am. Oversight v. U.S. Dep't of Gov't Efficiency*,
No. 25-cv-00409-BAH, 2025 WL 993518 (D.D.C. Apr. 16, 2025) ..................................... 12, 18

*Am. Oversight v. U.S. Dep't of State*,
414 F. Supp. 3d 182 (D.D.C. 2019) ................................................................................ 15

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
897 F.3d 314 (D.C. Cir. 2018) ....................................................................................... 12

*Armstrong v. Bush (Armstrong I)*,
924 F.2d 282 (D.C. Cir. 1991) .......................................................................... 4, 5–6, 11, 27

*Armstrong v. Exec. Off. of the President (Armstrong II)*,
1 F.3d 1274 (D.C. Cir. 1993) ...................................................................................... 23–24

*Chambers v. U.S. Dep't of Interior*,
568 F.3d 998 (D.C. Cir. 2009) ............................................................................... 8, 17, 19

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ....................................................................................... 13

*Citizens for Resp. & Ethics in Wash. v. Off. of Admin. (CREW II)*,
565 F. Supp. 2d 23 (D.DC. 2008) .............................................................................. 15, 18

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec. (CREW I)*,
527 F. Supp. 2d 101 (D.D.C. 2007) ................................................................................. 6

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
592 F. Supp. 2d 111 (D.D.C. 2009) ................................................................................ 24

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y (OSTP I)*,
No. CV 14-765 (GK), 2016 WL 10676292 (D.D.C. Dec. 12, 2016) ............................... 15, 19–20

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y (OSTP II)*,
241 F. Supp. 3d 14 (D.D.C. 2017) ................................................................ 16

*CREW v. U.S. DOGE Serv.*,
769 F. Supp. 3d 8 (D.D.C. 2025) .................................................................. 12

*DiBacco v. U.S. Army*,
795 F.3d 178 (D.C. Cir. 2015) ............................................................ 8, 18, 19

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
15 F. Supp. 3d 32 (D.D.C. 2014) .................................................................. 13

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
920 F.3d 1 (D.C. Cir. 2019) .................................................................... 13, 27

*Kissinger v. Reporters Comm. for Freedom of Press*,
445 U.S. 136 (1980) ........................................................................................ 8

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .................................................................. 3, 12, 27

*Mexichem Specialty Resins, Inc. v. Env't Prot. Agency*,
787 F.3d 544 (D.C. Cir. 2015 ....................................................................... 13

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) .................................................................................. 4, 19

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................................... 13

*Public Citizen v. Carlin*,
184 F.3d 900 (D.C. Cir. 1999) ....................................................................... 5

*Rodriguez v. U.S. Dep't of Def.*,
236 F. Supp. 3d 26  (D.D.C. 2017) ............................................................... 16

*SafeCard Servs., Inc. v. S.E.C.*,
926 F.2d 1197 (D.C. Cir. 1991) .................................................................... 17

*Shaw v. Austin*,
539 F. Supp. 3d 169 (D.D.C. 2021) .............................................................. 13

Shawnee Tribe v. Mnuchin,
984 F.3d 94 (D.C. Cir. 2021) ........................................................................ 27

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ................................................................................................ 19

*U.S. Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .................................................................................................. 8

*United States ex rel. Staggers v. Medtronic, Inc.*,
No. 1:15-CV-392-TSC-RMM, 2022 WL 4078969 (D.D.C. Sept. 6, 2022) ................................ 12

*United States v. Sum of $70,990,605*,
No. 12-cv-1905 (RDM–AK), 2015 WL 1021118 (Mar. 6, 2015) ................................ 18

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) ................................................................................ 16

*Winter v. Nat. Res. Def. Council*,
555 U.S. (2008) ...................................................................................................... 13

*Zhi Chen v. D.C.*,
839 F. Supp. 2d 7 (D.D.C. 2011) ............................................................................ 19

**Statutes**

5 U.S.C. § 552 ............................................................................................. 1, 7, 8, 17
5 U.S.C. §§ 701 *et seq.* .................................................................................... 6
44 U.S.C. § 2902 ............................................................................................. 4, 27
44 U.S.C. § 3101 ............................................................................................. 1, 4, 5
44 U.S.C. § 3102 ............................................................................................. 5, 14
44 U.S.C. § 3105 ............................................................................................. 5, 14
44 U.S.C. § 3106 ............................................................................................. passim
44 U.S.C. § 3301 ...................................................................................... 4, 14–15, 21
44 U.S.C. § 3314 ............................................................................................. 1, 24

**Regulations**

36 C.F.R. § 1225.10 .......................................................................................... 24
36 C.F.R. § 1226.10 .......................................................................................... 24

**Other Authorities**

General Records Schedule 6.1 ...................................................................... passim
DHS Policy Directive 141-03 ......................................................................... passim

**Rules**

Federal Rule of Civil Procedure 65(a) ............................................................ 14

## INTRODUCTION

Nowadays, almost everyone texts. And text messages are an increasingly common means for public officials—including, by all accounts, Secretary of Homeland Security Kristi Noem—to communicate about official business. That is not illegal. But failing to preserve text messages about official business is illegal. And, by its own admission, that is exactly what Defendant Department of Homeland Security (DHS) did when it announced a new policy under which it no longer keeps text messages or records reflecting those messages, for texts sent after April 9, 2025. That illegal policy requires immediate judicial relief to prevent important public records from being lost forever.

Like older methods of communication (such as emails and memos), text messages about official government business are subject to two federal laws: the Federal Records Act (FRA), 44 U.S.C. §§ 3101-3314, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Broadly speaking, the FRA requires agencies to develop and implement policies to *preserve* public records, and the FOIA requires agencies to *disclose* public records (or specify why they are exempt from disclosure) on request. DHS had previously adopted a recordkeeping policy, approved by Defendant National Archives and Records Administration (NARA), that required preservation of text messages that involve official government business. But sometime in 2025, DHS revised that policy without NARA's approval. DHS's new policy, as it explained to Plaintiff in writing, is that "text message data generated after April 9, 2025, is no longer maintained."

Plaintiff now seeks four forms of preliminary relief: (1) a preservation order, under this Court's inherent authority, ordering DHS to preserve records that are or may be subject to the FOIA requests at issue in this litigation; (2) a preliminary injunction under the FRA, ordering DHS to revise its recordkeeping policy to comply with the FRA; (3) a preliminary injunction under the FRA, ordering Defendants Noem and DHS to notify the Acting Archivist of the United States of

actual, impending, or threatened unlawful destruction of records and initiate action through the Attorney General for recovery of unlawfully removed records; and (4) a preliminary injunction under the FRA, ordering Defendants Marco Rubio (as Acting Archivist) and NARA to request the Attorney General to initiate action.

Plaintiff easily meets its burden to merit this preliminary relief given its likelihood of success on the merits and the irreparable harm it will suffer absent judicial intervention. First, by its own admission, DHS does not maintain and cannot search for text messages *or* records reflecting those messages generated after April 9, 2025. Therefore, without a preservation order from this Court, records potentially responsive to Plaintiff's FOIA requests will likely be lost forever.

Second, Defendant DHS has illegally adopted a recordkeeping policy that does not meet FRA requirements. Even though DHS secured NARA approval of a separate policy requiring text messages to be preserved, either in their original format or in approved alternate formats, sometime in 2025, DHS implemented a different, noncompliant recordkeeping policy. That policy came to light for the very first time in DHS's July 23, 2025 response to American Oversight's July 1, 2025 "L.A. National Guard" request, Compl. ¶¶ 31–33, Ex. A, ECF No. 1, in which DHS stated that "text message data generated after April 9, 2025, is no longer maintained," *id.* Ex. A at 3 (hereinafter referred to as the "2025 Text Message Non-Maintenance Policy"). Without court intervention requiring DHS to follow an FRA-compliant policy, more records (including those potentially responsive to current and future FOIA requests) are at risk of irreparable loss.

Third, Defendants Noem, DHS, Rubio, and NARA have failed to initiate an enforcement action to recover those records and prevent their further removal and destruction. They have been on notice for nearly two months, since Plaintiff sent letters alerting them to the issue on

August 28, 2025. The next day, members of Congress asked Defendant Rubio to investigate the possible willful destruction of federal records by Defendant Noem and other senior DHS officials. But, as demonstrated by their inaction to date, they will not do so without a court order.

The balance of the equities also tips in Plaintiff's favor. Defendant DHS will suffer no harm from being ordered to preserve all records potentially responsive to Plaintiff's FOIA requests, which will simply require the agency to meet existing statutory obligations. Nor will Defendants Rubio, Noem, DHS, and NARA suffer harm from being ordered to take actions the FRA requires them to take. But Plaintiff will be irreparably harmed without preliminary relief, as records that are likely responsive to its FOIA requests will continue to be removed, lost, and/or destroyed unless this Court issues a FOIA preservation order and orders Defendants to follow an FRA-compliant recordkeeping policy and take the enforcement actions required by the FRA. *See Am. First Legal Found. v. Becerra*, No. CV 24-1092 (RC), 2024 WL 3741402, at *16 (D.D.C. Aug. 9, 2024) (finding that "whatever the extent of the burden [to the agency] may be—it likely does not outweigh the harm that would inure to Plaintiff (and the public at large) were [the agency] permitted to continue its practice of deleting former employees' emails while this litigation is pending"), *reconsideration denied sub nom. Am. First Legal Found. v. Kennedy*, No. CV 24-1092 (RC), 2025 WL 1726025 (D.D.C. June 20, 2025).

Finally, an injunction compelling Defendants DHS, Noem, NARA, and Rubio to act is in the public interest. In general, there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). And here, there is a strong public interest in the preservation and recovery of text messages—and FOIA release of non-exempt portions— by which top DHS officials, including Defendant Noem herself, conduct official government

business. *See* 44 U.S.C. § 2902(1) (stating that a key purpose of FRA's records management standards is "[a]ccurate and complete documentation of the policies and transactions of the Federal Government"); *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 18 (D.D.C. 2025) ("The FRA ultimately ensures that agencies 'strike a balance between developing efficient and effective records management, and the substantive need for Federal records.'" (quoting *Armstrong v. Bush (Armstrong I)*, 924 F.2d 282, 292 (D.C. Cir. 1991))); *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").

## BACKGROUND

### I.    Legal Framework

Federal records are governed by two intersecting statutes: the FRA and FOIA.

#### A.    The Federal Records Act

The FRA governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. §§ 3301 *et seq*.; *see also* 44 U.S.C. chs. 21, 29, 31. The FRA defines "records" to include:

> all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

The FRA imposes duties on both the head of each agency and the Archivist of the United States. *See id.* §§ 3101, 3106. An agency head "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures,

and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101. Each agency head is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105. Furthermore, "the FRA requires agencies to obtain the Archivist's approval before destroying records on a recurring basis and, relatedly, mandates that agencies dispose of records only on terms *approved* by the Archivist." *Becerra*, 2024 WL 3741402, at *11 (emphasis added) (citing *Public Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999)).

When records are handled in a manner that contravenes the FRA, or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency . . . ." 44 U.S.C. § 3106(a). The agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency . . . ." *Id.*

If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time after being notified of any such unlawful action[,] . . . or is participating in, or believed to be participating in any such unlawful action," the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b). The obligation to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for

other redress is mandatory, not subject to agency discretion. *Armstrong I*, 924 F.2d at 295–96 ("In contrast to a statute that merely *authorizes* an agency to take enforcement action as it deems necessary, the FRA *requires* the agency head and Archivist to take enforcement action."). And where both the agency head and the Archivist have "failed to initiate remedial action in a timely [manner], private litigants may sue under the APA to require them to do so." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec. (CREW I)*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

The Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, authorizes judicial review of two types of claims for violations of the FRA: (1) a claim "that the [agency's] recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA"; and (2) "a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *CREW I*, 527 F. Supp. 2d at 111.

### B. DHS's Text Message Recordkeeping Policies

Since at least 2018, DHS has articulated, via written guidance directed to its component heads (DHS Policy Directive 141-03), its obligation under the FRA to capture, preserve and manage electronic messages, including text messages, created or transmitted in connection with public business,[1] and required its employees to "establish and maintain a separate record" of electronic messages "that may be considered federal records."[2] Compl. ¶ 85. Specifically, DHS's 2018 guidance states: "All DHS business transactions by electronic means are required to comply

---

[1] *See* Claire M. Grady, Under Secretary of Management, DHS, *Electronic Records Management Updates for Chat, Text, and Instant Messaging*, DHS Policy Directive 141-03, Feb. 23, 2018, *available at* https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-directive.pdf.
[2] *Id.* at 1.

with the Department's records management policies. DHS employees should take steps to establish and maintain federal records when conducting business using chat, text, or instant messaging."[3] The guidance advised that the "best" way to capture "conversations that are records" was to "[w]rite a memo to the file" documenting the conversation, including date, time, type, context, participants, subject, details, and preceding threads.[4]

In 2023, the agency submitted to NARA (and subsequently obtained NARA's approval for) a recordkeeping policy by which DHS committed to manage and dispose of all such electronic messages according to the General Records Schedule ("GRS") 6.1.[5] Compl. ¶ 86. Under DHS's version of GRS 6.1, electronic business communications, including "[m]essages from messaging services provided on mobile devices," and "[m]essages from messaging services on third party applications," (collectively hereinafter referred to as "text messages") transmitted by the DHS Secretary and other senior DHS officials must be permanently retained and eventually transferred from DHS to NARA.[6] Compl. ¶ 86.

As described in more detail below, *infra* Section II, sometime in 2025, disregarding both Policy Directive 141-03 and GRS 6.1, DHS adopted the 2025 Text Message Non-Maintenance Policy.

### C.  The Freedom of Information Act

Under the FOIA, "each agency, upon any [proper] request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The FOIA confers jurisdiction

---

[3] *Id.*
[4] *Id.* at 2. Plaintiff does not concede that this is the "best" way to preserve text messages that are federal records.
[5] *DHS Submission of Form NA-1005*, at 2,10, 20, Nat'l Archives Recs. Admin., https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-homeland-security/rg-0563/grs-6-1-0563-2023-0001-c.pdf (last accessed Oct. 19, 2025).
[6] *See id.* at 10.

on the district courts "to enjoin the agency from withholding agency records [sought by a FOIA requester] and to order the production of any agency records improperly withheld." *Id.* § 552(a)(4)(B); *see also Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980) ("[F]ederal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"). The FOIA refers to but does not specifically define "agency records." Under Supreme Court precedent, a document is an agency record subject to FOIA if an agency (1) "create[d] or obtain[ed]" the requested materials, and (2) "the materials have come into the agency's possession in the legitimate conduct of its official duties." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989). Because this definition is broader than the FRA's definition of "record," it is possible for material to be an "agency record" under FOIA even if it is not a "record" under the FRA.

While the FOIA does not provide specific record retention obligations, under D.C. Circuit precedent, "an agency may not avoid a FOIA request by intentionally ridding itself of a requested document." *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015); *see also Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("[A]n agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA.").

## II.    Factual and Procedural Background

The revelations precipitating this motion arose unexpectedly from a recent set of FOIA requests Plaintiff submitted to DHS—the earliest of which was submitted May 1, 2025. *See* Compl. ¶¶ 31, 39, 48, 49, 64, 77. Plaintiff American Oversight is a non-partisan, nonprofit organization committed to ensuring transparency in government and primarily engaged in disseminating information to the public. *Id.* ¶¶ 22-24. In July 2025, as it had done many times before, Plaintiff submitted two FOIA requests to DHS seeking key officials' communications regarding controversial current events—the deployment of the National Guard to Los Angeles, and the

establishment of the Everglades Detention Center. *See id.* ¶¶ 31, 39. These requests specifically asked DHS to release any text messages that would be responsive to the requests. *See id.*

Plaintiff anticipated that DHS might withhold a specific subset of those text messages and claim they were exempt from FOIA for various reasons. What Plaintiff did *not* anticipate was the response DHS sent: employing virtually identical language, DHS replied to both July FOIA requests, in writing, that it "is unable to conduct a search of text messages, as text message data generated after April 9, 2025, is no longer maintained." Compl. ¶ 33; *see also id.* ¶¶ 41, 88-90, 93, 96, Ex. A at 3, Ex. B. at 2; Mtn Ex. 1(Haddix Decl.) ¶ 6. This assertion of non-preservation of text message data is DHS's first statement (as far as Plaintiff is aware) of DHS's new 2025 Text Message Non-Maintenance Policy.

Plaintiff then sent several follow-up FOIA requests, including some aimed at learning more about the 2025 Text Message Non-Maintenance Policy.[7] The first sought "text messages . . . regarding official government business" sent or received by top DHS officials (including Noem) from July 1 to July 31, 2025. Compl. ¶ 48. The next sought "*records reflecting* all text messages . . . regarding official government business" sent or received by those officials in July 2025 that were "subsequently captured, retained, or preserved on official DHS systems." Compl. ¶ 49. DHS promptly responded to both requests, stating that it was "unable to locate or identify any responsive records, as DHS no longer has the capability to conduct a search of text messages." Compl. ¶ 50, Ex. C at 1, Ex. D at 1.[8] In other words, not only did DHS admit to contravening the FRA through

---

[7] A full recitation of all FOIA requests at issue in this action is provided in the Complaint. The earliest of the requests described in the Complaint, which may be impacted by DHS's policies discussed in the Complaint and this motion, was submitted to DHS on May 1, 2025. Compl. ¶ 78. Defendant DHS has not responded to that request. *Id.* ¶ 77.

[8] On August 25, 2025, Plaintiff administratively appealed DHS's responses to those requests. DHS granted both appeals on September 17, 2025, but as of this writing, DHS has not provided Plaintiff with any further communication regarding those requests. Ex. 1 ¶¶ 9-10.

the unlawful 2025 Text Message Non-Maintenance Policy, it also adopted a new policy, in violation of FOIA, to refuse to search for an entire category of agency records potentially responsive to FOIA requests.

In light of Policy Directive 141-03's guidance that the "best" way to capture text message conversations was to write a "memo to file,"[9] Plaintiff also submitted a FOIA request seeking "[a]ll 'memos to file' reflecting the content of text messages" sent or received by top DHS officials (including Defendant Noem) from April 10, 2025, through September 4, 2025. Compl. ¶ 60. DHS soon responded that it had "conducted a comprehensive search" but was "unable to locate or identify any responsive records." Compl. ¶ 69, Ex. E.

After fruitless efforts to get clarification about DHS's statements concerning its text message recordkeeping and search policies from DHS's FOIA Officer, *see* Compl.¶ 44; Mtn. Ex. 2 (Martinez Decl.) ¶ 4, on August 28, 2025, Plaintiff notified Defendants Noem and Rubio of the potential unlawful destruction or removal of federal records potentially responsive to Plaintiff's FOIA requests and asked them to take immediate action under 44 U.S.C. § 3106 to recover those records and prevent their further removal and destruction—including initiating action through the Attorney General. Compl. ¶¶ 97–104, Ex. F, Ex. G. NARA notified Plaintiff that it had received Plaintiff's August 28, 2025 letter the same day. Compl. ¶ 103, Ex. H.

The next day, citing DHS's statement in response to American Oversight's FOIA requests, Ranking Member of the U.S. House of Representatives Committee on Homeland Security, Bennie Thompson, and Ranking Member of the Subcommittee on Oversight, Investigations, and Accountability, Shri Thanedar, asked Defendant Rubio to initiate an investigation into whether

---

[9] *See* DHS Policy Directive 141-03, *supra* note 1.

Defendant Noem and other senior DHS officials may have willfully destroyed federal records and not reported the destruction to NARA. Compl. ¶ 108, Ex. I.

In ceasing to preserve and maintain text messages as required under DHS's lawful records retention policy, described above in Section I.B., by its own admission, DHS has apparently rendered itself incapable of searching for text messages (at least at the enterprise level), as well as the records reflecting those messages, that are responsive to Plaintiff's FOIA requests. Compl. ¶¶ 88–90, 93, 96, 155–159, Ex. A at 3, Ex. B. at 2, Ex. C at 1, Ex. D at 1. And despite Plaintiff's urging that DHS must require individual records custodians—including Defendant Noem and other senior officials at DHS whose government-business text messages Plaintiff's FOIA requests seek—to search their own devices for agency records, Compl. ¶ 44, Ex. F at 16, Ex. G. at 17, Ex. 2 ¶ 5, DHS has not clarified or corrected its claim that it is incapable of searching for those materials, Compl. ¶ 45.

Meanwhile, nearly two months have now passed since Plaintiff asked Defendants Noem, Rubio, and NARA to initiate an enforcement action, and they have refused to do so. Compl. ¶¶ 105–107. Plaintiff's claims under the APA and FRA are thus ripe for judicial review. *See Armstrong I*, 924 F.2d at 295 ("[I]f the agency head or Archivist does nothing while an agency official destroys or removes records in contravention of agency guidelines and directives, private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action."). Plaintiff's FOIA claims for the six requests at issue are also ripe, as DHS's statutory response deadline has passed. *See* Compl. ¶¶ 31–76.[10]

---

[10] As discussed below, Plaintiff does *not* at this time seek a preliminary injunction ordering release of records subject to its FOIA requests—only an order to preserve those records that may

## LEGAL STANDARD

This motion seeks two forms of preliminary relief: a preservation order under the Court's inherent authority in connection with the records underlying Plaintiff's FOIA claims and a preliminary injunction in connection with Plaintiff's FRA claims.

With respect to a motion for a preservation order, because federal courts "have the inherent power to issue orders preserving information relevant to the claims and defenses brought before them," "there is no binding authority instructing this Court how to weigh preservation order requests." *United States ex rel. Staggers v. Medtronic, Inc.*, No. 1:15-CV-392-TSC-RMM, 2022 WL 4078969, at *2 (D.D.C. Sept. 6, 2022) (collecting cases). Thus, the Court may apply a standard rooted in its inherent power less stringent than that required for a preliminary injunction. *See id.*; *see also Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 25-cv-00409-BAH, 2025 WL 993518, at *1 (D.D.C. Apr. 16, 2025) (granting plaintiff's motion for preservation order); *CREW v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 30–31 (D.D.C. 2025) (noting without deciding that preservation order could be granted either pursuant to court's inherent authority or as preliminary relief).

A party seeking a preliminary injunction must "must make a 'clear showing'" that (1) it is likely to succeed on the merits; (2) it is likely to suffer "irreparable harm in the absence of preliminary relief;" (3) the "balance of the equities [is] in its favor;" and (4) an injunction "accord[s] with the public interest." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)). "The last two factors 'merge when the Government is the opposing party.'"

---

be responsive to these requests. Likewise, Plaintiff's FOIA policy or practice claim, Compl. ¶¶ 151–160, is also ripe for judicial review but is not a subject of this motion for preliminary relief.

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

A plaintiff's likelihood of success on the merits of its case is the "most important factor" in determining whether preliminary injunctive relief is warranted. *See Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The "irreparable harm" showing is also critical. *See, e.g., Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction[.]"). The injury must be "both certain and great," as well as "actual and not theoretical," and "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. Env't Prot. Agency*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy*, 454 F.3d at 297) (emphasis in original); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (explaining that plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not just that injury is a "possibility" (emphasis in original)). Finally, the injury "must also be . . . 'beyond remediation.'" *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.,* 15 F. Supp. 3d 32, 44 (D.D.C. 2014)).

American Oversight easily satisfies the higher preliminary injunction standard with respect to both forms of preliminary relief it seeks, and so the Court should grant its motion for a preservation order and a preliminary injunction.

## ARGUMENT

Plaintiff's motion for preliminary relief has four distinct parts. Plaintiff asks the Court:

1. Pursuant to its inherent authority, to order Defendants Noem and DHS to preserve all records that may be responsive to the six FOIA requests at issue in the Complaint;

2. Pursuant to Federal Rule of Civil Procedure 65(a) and the APA, to enjoin Defendant DHS from implementing and applying its 2025 Text Message Non-Maintenance Policy, by which it does "not maintain" text message data generated after April 9, 2025, and, pending resolution of this litigation, to adopt an FRA-compliant policy, approved by NARA, that provides, as required under the FRA, "effective control[] over the creation and over the maintenance and use of records," 44 U.S.C. § 3102(1), and "establish[es] safeguards against the removal or loss of records," *id*. § 3105;

3. Pursuant to Federal Rule of Civil Procedure 65(a), and the APA, to order Defendants Noem and DHS to notify Acting Archivist Rubio of the actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Acting Archivist, to initiate action through the Attorney General for the recovery of records that Noem knows or has reason to believe have been unlawfully removed from DHS, in accordance with 44 U.S.C. § 3106(a);

4. Pursuant to Federal Rule of Civil Procedure 65(a), and the APA, to order Defendants Rubio and NARA, in accordance with 44 U.S.C. § 3106(b), to ask the Attorney General to:

   a. initiate action for the recovery of records that Rubio knows or has reason to believe have been unlawfully removed from DHS;

   b. recover all text messages and related data "made or received" by DHS employees (including senior DHS officials) "in connection with the transaction of public business," 44 U.S.C. § 3301(a)(1)(A), that have

been removed or destroyed or are at risk of removal or destruction; and

c. prevent the actual, threatened, or impending removal or destruction of such messages and data;

and order Defendant Rubio to notify Congress when the above request is made. *See* 44 U.S.C. § 3106(b).

All four factors under the preliminary injunction standard weigh in favor of granting American Oversight the relief it seeks.

## I.    Plaintiff Satisfies the Preliminary Relief Standard for a Preservation Order in Connection with Its Freedom of Information Act Claims.

Even though a less stringent standard applies, Plaintiff meets the higher preliminary injunction standard for its claims of inadequate search (Count IV) and wrongful withholding (Count V) in response to its FOIA requests, rendering preliminary relief appropriate. And here, Plaintiff seeks modest preliminary relief, narrowly tailored to preserve the status quo ante. Unlike in the typical (albeit rare) FOIA case where preliminary relief requiring release of records by a date certain is granted, *see, e.g.*, *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186–188 (D.D.C. 2019) (ordering production of non-exempt records by date certain where "time [was] clearly of the essence]"), here, Plaintiff seeks an order requiring preservation of records potentially responsive to its FOIA requests, which are at risk of loss, pending further proceedings. A court need not find a "mathematical probability" of "ultimate success" to grant a preservation order, but just that the case presents a "serious legal question." *Citizens for Resp. & Ethics in Wash. v. Off. of Admin. (CREW II)*, 565 F. Supp. 2d 23, 28 (D.D.C. 2008); *see also Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y (OSTP I)*, No. CV 14-765 (GK), 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016) (granting in part motion to compel preservation of records otherwise at risk of

destruction pending determination of serious legal question of whether they were agency records subject to FOIA).

Here, based on DHS's bald refusal to conduct a search for any text messages (including those transmitted via third party messaging platforms) responsive to American Oversight's FOIA requests, Plaintiff can readily demonstrate a likelihood of success on the merits of its FOIA claims at Counts IV and V of the Complaint. Compl. ¶¶ 31–76. And in light of the alleged FRA violations arising from DHS's 2025 Text Message Non-Maintenance Policy, those text messages may be destroyed while this litigation is pending, presenting an obvious risk of irreparable harm to Plaintiff should the Court not issue preliminary relief. Because the balance of equities also tips in favor of the issuance of preliminary relief, a preservation order is appropriate in this case.

### A. Plaintiff has shown a strong likelihood of success on the merits of its FOIA claims.

American Oversight is likely to prevail on its fourth and fifth claims for relief, that DHS has failed to conduct an adequate search for agency records responsive to the FOIA requests at issue in this lawsuit and that DHS wrongfully withheld non-exempt records. DHS is required to conduct a search "reasonably calculated to uncover all relevant documents" responsive to the FOIA requests at issue. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Its failure to do so is tantamount to an improper withholding of agency records. *See Rodriguez v. U.S. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) ("It is axiomatic that an inadequate search for records constitutes an improper withholding under FOIA." (internal quotations omitted)). As noted above, Plaintiff does not at this time seek preliminary relief ordering DHS to *release* the text messages it has wrongfully withheld—only to *preserve* them (and the status quo ante) so that their disclosure may be litigated in due course.

Plaintiff is likely to prevail because DHS, by its own admission, conducted no search for the requested records: text messages, and records reflecting those messages, transmitted to or from

senior DHS officials, including Defendant Noem, since April 9, 2025. Compl. ¶¶ 33, 41, 50, Ex. A at 3, Ex. B at 2, Ex. C at 1; Ex. D at 1; Ex.1 ¶¶ 6–7. DHS claims it did not conduct a search because it "no longer has the capability to conduct a search of text messages," Compl. ¶ 50, Ex. C, Ex. D, but even if DHS can no longer search for the requested records in its *departmental systems*, individual *custodians* can undoubtedly conduct manual searches through their own devices. If DHS has rendered itself incapable of the former, the statute demands it do the latter. *See* 5 U.S.C. § 552(a)(3)(D) (defining a "search" as a "review, manually or by automated means" to identify responsive records). DHS's GRS-6.1 specifically states that its high-ranking officials (who include the custodians identified in Plaintiff's FOIA requests) "are using general chat / text features affiliated with DHS" on mobile devices.[11] Compl. ¶ 86, n.6. A FOIA-compliant search therefore must include a search of those mobile devices, even if that search must be conducted manually. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents . . . .").

Even if DHS could not conduct even a *manual* search for text messages (though as a practical matter, it cannot be true that agency personnel cannot search their own devices), "an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009)). In short, DHS cannot dodge its FOIA search obligations by unlawfully removing agency records. *See DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) ("The general rule is that an agency may not avoid a FOIA request by intentionally ridding itself of a requested document.").

---

[11] *DHS Submission of Form NA-1005*, *supra* n.5, at 10.

Because DHS has, by its own admission, failed to conduct a search for records responsive to Plaintiff's FOIA requests—and possibly allowed responsive records to be destroyed under the 2025 Text Message Non-Maintenance Policy—Plaintiff has satisfied the "likelihood of success on the merits" prong as to Counts IV and V.

### B. Plaintiff has shown likely irreparable harm absent a Preservation Order.

DHS's unlawful 2025 Text Message Non-Maintenance Policy constitutes an explicit admission that Defendants DHS and Noem have, at best, removed from their possession records responsive to the FOIA requests at issue in this lawsuit, and at worst, destroyed such records. The exact status of these text messages is unknown—some may still exist in some form, others may have been destroyed already—but all still-existing DHS text messages generated after April 9, 2025, are at risk of loss. If DHS is not ordered to preserve all records potentially responsive to American Oversight's FOIA requests, those records will likely be altered, lost, or destroyed before any ultimate determination on the merits of Plaintiff's FOIA claims. Plaintiff "would have absolutely no recourse in the event that records potentially responsive to its FOIA requests were destroyed," and courts have found that to be a "clear" case of irreparable harm. *CREW II*, 565 F. Supp. 2d at 29-30; *see also Am. Oversight v. U.S. Dep't of Gov't Efficiency*, No. 1:25-CV-00409-BAH, 2025 WL 993518, at *1 (D.D.C. Apr. 2, 2025); *United States v. Sum of $70,990,605*, No. 12-cv-1905 (RDM–AK), 2015 WL 1021118, at *2 (Mar. 6, 2015) (determining an order requiring preservation of relevant records pending resolution of the merits is particularly appropriate where there is a "significant risk of alteration or destruction" of relevant records).

This potential harm is particularly acute given American Oversight's mission to promote accountability in government through transparency by using FOIA to obtain records and disseminate information to the public. For instance, in this case, the records requested may shed light on matters of significant public concern, such as the deployment of the National Guard to

Los Angeles and the detention of migrants in a controversial facility in the Everglades. *See* Compl. ¶¶ 31, 39; *see also* Ex. 1 ¶2, Attachment 1.

Plaintiff has satisfied the "irreparable harm" prong to warrant the preliminary preservation order it seeks.

### C. Plaintiff has shown that the balance of the equities and the public interest weigh in favor of a Preservation Order.

American Oversight seeks to preserve the Court's ability to grant meaningful relief after litigation on the merits by requiring DHS to do what all parties in civil litigation must do: "preserve potentially relevant evidence once [that party] anticipates litigation." *See Zhi Chen v. D.C.*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (citation modified). Furthermore, neither DHS nor Noem can be harmed by an order compelling them to comply with their legal obligations to preserve records responsive to American Oversight's requests, *see, e.g.*, *Chambers*, 568 F.3d at 1004; *Dibacco*, 795 F.3d at 192, whereas the risk of irreparable harm to American Oversight, *see supra* Section I.B, tilts the balance of equities to Plaintiff's side of the equation.

As for the public interest, FOIA exists "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989) ("FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny[.]" (italics omitted)). Thus, in FOIA cases, "[t]he Public Interest weighs heavily in favor of issuing a Preservation Order" to "ensur[e] that records are preserved while the Court considers whether their disclosure is appropriate under FOIA." *Competitive Enter. Inst.*, 2016 WL 10676292, at *4 (citation modified). Accordingly, ordering DHS to preserve its records serves the public interest because it will ensure that these documents

remain available to the public should they ultimately be determined to be subject to disclosure under FOIA.

Plaintiff has met its burden under the "balance of the equities" and "public interest" prongs to warrant a preservation order.

## II.    Plaintiff is Entitled to a Preliminary Injunction for Its Federal Records Act Claims.

Just as Plaintiff is entitled to preliminary relief as to its FOIA claims, so too does Plaintiff meet all four preliminary injunction factors as to its FRA claims. DHS's adoption of the 2025 Text Message Non-Maintenance Policy directly contravenes the statute, and Defendants have failed to undertake their mandatory statutory enforcement duties, so Plaintiff is likely to succeed on the merits. The agency's unlawful policy and Defendants' failure to take statutorily required action threatens irreparable harm to Plaintiff by risking destruction of records responsive to not only Plaintiff's pending FOIA requests, but also likely future requests. Finally, because Plaintiff's requested relief will require no more than for Defendants to comply with existing statutory obligations, and because preservation and protection of federal records is inherently in the public interest, the balance of equities and public interest also weigh in favor of preliminary relief.

Accordingly, Plaintiff is entitled to a preliminary injunction under the FRA ordering: (1) Defendants DHS and Noem to refrain from implementing the 2025 Text Message Non-Maintenance Policy and to adopt an FRA-compliant policy, (2) Defendants DHS and Noem to involve the Acting Archivist and Attorney General in efforts to recover messages at risk of loss, and (3) Defendants NARA and Rubio to involve the Attorney General in such efforts and notify Congress.

### A.    American Oversight Is Likely to Succeed on the Merits of its FRA Claims.

#### a.  *DHS and Noem have adopted a recordkeeping policy that is not in accordance with law and/or is arbitrary and capricious.*

American Oversight is likely to succeed on the merits of its first claim for relief under the FRA, that Defendants DHS and Noem have adopted a recordkeeping program that is not in accordance with law and/or is arbitrary and capricious, and they have failed to safeguard federal records. *See* Compl. ¶¶ 111–121.

It is beyond dispute that text messages, when used "in connection with the transaction of public business," constitute "records" under the FRA. 44 U.S.C. § 3301(a)(1)(A). DHS's 2018 Policy Directive 141-03 specifies that "business communications created and transmitted between Department employees that include substantive information about agency business, policies, and activities made via chat, *text*, or instant message may be considered federal records and must be preserved," and that "DHS employees should take steps to establish and maintain federal records when conducting business using chat, *text*, or instant messaging."[12]

Further, in 2023, DHS elected to use NARA's General Records Schedule 6.1. That schedule says that "[a]gencies may choose to use this GRS for instant messages, *text messages*, and chat messages that serve a similar purpose as email to facilitate communication and information sharing."[13] And GRS 6.1 says that, for "Capstone" officials (senior officials including agency head, principal assistants to the head of the agency, and other top officials), electronic messages must be kept on a "permanent" basis.[14] In DHS's form (Form NA-1005) submitted to NARA stating its choice to adopt GRS 6.1 in 2023, DHS responded affirmatively to questions concerning the application of "this GRS to other types of electronic messages" and inclusion of "[m]essages from messaging services provided on mobile devices."[15]

---

[12] DHS Policy Directive 141-03, *supra* note 1, at 1 (emphasis added).
[13] Nat'l Archives & Recs. Admin., *General Records Schedule 6.1* (Jan. 2023), at 18, https://www.archives.gov/files/records-mgmt/grs/grs06-1.pdf (emphasis added).
[14] *Id.* at 20 (page 3 of PDF).
[15] *DHS Submission of Form NA-1005*, *supra* note 5, at 2, 10.

On August 7, 2025, NARA approved DHS's adoption of GRS 6.1.[16] But that timing was ironic, because just weeks before that date, DHS told Plaintiff it was operating under an entirely different policy. At some point in 2025,[17] DHS changed its recordkeeping policy without NARA's approval. Its new 2025 Text Message Non-Maintenance Policy is to "no longer maintain[]" "text message data generated after April 9, 2025."[18] Compl. ¶¶ 33, 41, Ex. A at 3, Ex. B at 2. Crucially, this is not a "de facto" policy inferred from the agency's actions; rather, DHS stated that policy to Plaintiff, repeatedly, in writing. *See id.*

To be sure, it may be lawful to adopt a recordkeeping policy in which text messages are not preserved in their native format, but instead captured in some other agency format. For example, DHS Policy Directive 141-03 advised capturing text messages regarding public business in a "memo to file."[19] But the evidence lies in DHS's own responses to Plaintiff's FOIA requests. In response to a FOIA request seeking "*records reflecting* all text messages . . . regarding official government business" sent or received by top DHS officials in July 2025 that were "subsequently captured, retained, or preserved on official DHS systems," Compl. ¶ 49 (emphasis added), DHS promptly responded that it was "unable to locate or identify any responsive records." Compl. ¶ 50, Ex. C at 1, Ex. D at 1. And in response to a FOIA request specifically seeking "[a]ll 'memos to

---

[16] *See id.* at 2.

[17] The timing of DHS's sudden switch from preserving text messages as required under both its 2018 Policy Directive and its subsequent GRS-6.1 coincides with rapid developments in DHS's efforts to deport Kilmar Abrego Garcia over a court order prohibiting his deportation. *See Abrego Garcia v. Noem*, 777 F. Supp. 3d 501 (D. Md. Apr. 6, 2025), *application for stay granted in part and denied in part*, 145 S. Ct. 1017 (Apr. 10, 2025).

[18] Whether and when GRS 6.1 applied, nominally or actually, to DHS's records is irrelevant to this action. The point is that DHS has adopted the unlawful 2025 Text Message Non-Maintenance Policy, espoused that Policy in writing to a member of the public, and given no indication to American Oversight that it has discontinued that Policy. And *unlike* GRS 6.1, the 2025 Text Message Non-Maintenance Policy was not approved by NARA and violates the FRA.

[19] DHS Policy Directive 141-03, *supra* note 1, at 2.

file' reflecting the content of text messages" sent or received by top DHS officials (including Defendant Noem) from April 10, 2025, through September 4, 2025, DHS responded that it had "conducted a comprehensive search" but was "unable to locate or identify any responsive records." Compl. ¶¶ 60, 69, Ex. E. In other words, according to DHS, it is not maintaining text message data in *any* form.

A similar, recent FRA case is instructive. In *America First Legal Foundation v. Becerra*, 2024 WL 3741402 (D.D.C. Aug. 9, 2024), in response to plaintiff's FOIA requests, the agency stated that it no longer maintained communications the plaintiff was seeking. *Id.* at *13. The plaintiff accordingly alleged that the defendant agency enacted and obtained NARA's approval to use one recordkeeping policy and disposition schedule—the GRS 6.1—to govern retention of its employees' electronic communications, but then "turned around and used some other 'unknown, unpublished policy,'" with "different requirements than GRS 6.1," under which the agency deleted the communication records "on a much shorter timeframe than those established by GRS 6.1." *Id.* at *11. As here, the *Becerra* plaintiff "was not challenging [the agency's] noncompliance with GRS 6.1 but rather the fact that the agency *is* apparently complying with whatever non-public recordkeeping policy the agency chose to adopt in its stead." *Id.* at *12 (emphasis in original).

The court found the plaintiff had shown a likelihood of success on the merits of its FRA claim that that policy was "unlawful or inadequate." *Id*. The court observed, "it is well-established" that "[a]gencies may only dispose of records on terms approved by the Archivist." *Id*. (citing *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y (OSTP II)*, 241 F. Supp. 3d 14, 18 (D.D.C. 2017); *Armstrong v. Exec. Off. of the President ("Armstrong II")*, 1 F.3d 1274, 1286 n.11 (D.C. Cir. 1993) (reiterating "the FRA's specific requirement that federal records may be 'alienated or destroyed' only with the approval of the Archivist" (quoting 44 U.S.C. § 3314))). "Following the

Archivist's approval of a disposal schedule," the court noted, "an agency must preserve records in accordance with that schedule." *Becerra*, 2024 WL 3741402, at *12 (citing 36 C.F.R. §§ 1225.10, 1226.10). "It may not unilaterally decide to adopt a different schedule to govern retention of the same material." *Id.* (citing 36 C.F.R § 1226.10; *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 592 F. Supp. 2d 111, 121 (D.D.C. 2009)).

Similarly, here, DHS's 2025 Text Message Non-Maintenance Policy reflects a new, alternative policy, not approved by the Archivist, that likely violates the FRA. But this case presents even more concerning facts than in *Becerra*. In that case, the court further noted that even assuming that agency employees were, in fact, "storing emails which constitute federal records elsewhere," there was "no evidence that suggests that those records are being retained for the time periods required by GRS 6.1." *Id.* In contrast, here, there is significant evidence—DHS's plain statement that it is "unable to locate" the records reflecting text messages and preserved elsewhere, or "memos to file," Compl. ¶¶ 50, 69—that text messages which constitute federal records are *not* being stored elsewhere.

Thus, like the plaintiff in *Becerra*, American Oversight has "demonstrated a high likelihood of success on" its claim that the 2025 Text Message Non-Maintenance Policy is not in accordance with the law and is arbitrary and capricious. *See* 2024 WL 3741402, at *10.

> **b. Noem, DHS, Rubio, and NARA have failed to enforce the FRA's provisions to prevent unlawful removal or destruction of federal records and recover federal records unlawfully removed or destroyed.**

Plaintiff is also likely to succeed on the merits of its second claim for relief under the FRA, that Defendants DHS and Noem failed to notify the Archivist of "actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records," 44 U.S.C. § 3106(a), in DHS's custody, and "with the assistance of the Archivist[,] . . .

initiate action through the Attorney General for the recovery of records" that Defendant Noem "knows or has reason to believe have been unlawfully removed from that agency," *id.*

Multiple facts demonstrate that Defendants are on notice of likely FRA violations. Plaintiff notified all Defendants on August 28, 2025, of the actual, impending, or threatened removal of the subject records from DHS custody. Compl. ¶¶ 100–104, Ex. F, Ex. G, Ex. H. On August 29, 2025, members of Congress also asked Defendant Rubio to initiate an investigation into whether Defendant Noem and other senior DHS officials may have willfully destroyed the subject records and not reported the destruction to NARA. Compl. ¶ 108. A reasonable time has passed since those requests, yet there has been no response to Plaintiff from Defendants, nor is there any case for investigation of DHS's unauthorized disposition of text messages, according to NARA's website, *see id.* ¶ 105. Moreover, DHS's GRS 6.1 plainly states that DHS employees use text messaging for business purposes.[20] According to its repeated statements to Plaintiff in response to multiple FOIA requests, DHS lacks any text messages or text message data or records reflecting text messages created or transmitted by Noem, making it is likely that Noem "is participating in, or believed to be participating in" unlawful destruction of records. 44 U.S.C. § 3106(b).

Because Defendants are on notice of—if not actively participating in—actual, impending, or threatened loss of federal records and not undertaken their mandatory statutory duties to prevent further loss and recover federal records unlawfully removed or destroyed, Plaintiff has demonstrated a likelihood of success on the merits of this claim.

### c. Defendants Rubio and NARA have failed to initiate enforcement action through the Attorney General.

Finally, Plaintiff has shown likelihood of success on the merits of its third claim for relief, that Defendant Rubio, despite his knowing of the "actual, impending, or threatened" unlawful

---

[20] DHS Submission of Form NA-1005, *supra* note 5, at 10.

removal or destruction of text messages and related data generated after April 9, 2025, has failed to initiate enforcement action through the Attorney General for the recovery of those records as he must do under 44 U.S.C. § 3106(b). In *Becerra*, after finding that "any emails disposed of pursuant to [the agency's] alternate practice [were] likely being disposed of unlawfully," 2024 WL 3741402, at *13, the court ordered the Archivist to seek the Attorney General's assistance to recover the records that may have been "prematurely destroyed or deleted" and to ensure "the proper preservation" of such communications, *id*. at *17. Because American Oversight has demonstrated a likelihood of success on this claim, this Court should order similar relief.

### B.    Plaintiff Will Suffer Irreparable Harm Absent Preliminary Relief.

Plaintiff has no less than thirteen (13) pending FOIA requests that specifically seek text messages and records reflecting text messages transmitted by Defendant Noem and nearly a dozen other senior DHS officials. Compl. ¶¶ 31, 39, 48, 49, 60, 63, 64, 77. Plaintiff also intends to continue seeking similar records from DHS in the future, in furtherance of its mission to promote government transparency and accountability. *Id.* ¶ 23. In *Becerra,* the court found plaintiff met its burden to show irreparable and imminent harm absent preliminary relief not only by showing that "loss or destruction of federal records is a significant harm to both Plaintiff and the public, . . . that cannot be cured once the records are lost or destroyed," but also because "the harm Plaintiff seeks to avoid is the destruction of federal records now *and in the future*." 2024 WL 3741402, at *15 (emphasis added).

Despite having ample notice of the potential loss or destruction of records responsive to Plaintiff's FOIA requests in this case, Defendants have refused to take the actions they are required to take to prevent that imminent unlawful removal or destruction and recover those records that have been unlawfully removed or destroyed. Thus, absent a preliminary injunction from this Court requiring them take those actions, not only will records responsive to Plaintiff's FOIA requests

possibly be forever lost or destroyed, so too will Plaintiff suffer from the ongoing destruction of federal records to which Plaintiff or the public may be entitled in the future. *See id*. Plaintiff has therefore met its burden to show irreparable harm absent the requested relief.

### C. The Requested Relief Will Not Burden Any Valid Governmental Interests and Is in the Public's Interest.

Plaintiff's strong likelihood of success on the merits of its claim that DHS is unlawfully removing, alienating or destroying text messages and related data generated after April 9, 2025 "indicates that a preliminary injunction would serve the public interest." *Becerra*, 2024 WL 3741402, at *16 (citing *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (explaining that "[a] party's likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest because there is generally no public interest in the perpetuation of unlawful agency action" (cleaned up))). "On the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their . . . operations." *Becerra*, 2024 WL 3741402, at *16 (citing *League of Women Voters*, 838 F.3d at 12); *see also Guedes*, 920 F.3d at 10 ("The last two factors [of the preliminary injunction standard] merge when the Government is the opposing party.").

In enacting the FRA, Congress sought to ensure "(1) efficient and effective records management; (2) "[a]ccurate and complete documentation of the policies and transactions of the Federal Government"; and (3) "[j]udicious preservation and disposal." *Armstrong I*, 924 F.2d at 284–85 (quoting 44 U.S.C. § 2902). Without the requested preliminary relief, each one of those purposes continues to be thwarted, yet Defendants can show no harm from being preliminarily ordered to do what the law requires them to do. Thus, Plaintiff has demonstrated that the balance of the equities and the public interest weigh in favor of preliminary relief.

**CONCLUSION**

For the foregoing reasons, American Oversight respectfully requests that this Court grant its motion for a preservation order and preliminary injunction. A proposed Order accompanies this motion.


Dated: October 20, 2025                    Respectfully submitted,

                                           /s/ *Elizabeth Haddix*
                                           Elizabeth Haddix
                                           D.C. Bar No. 90019750
                                           Jessica Jensen
                                           D.C. Bar No. 1048305
                                           Daniel Martinez
                                           D.C. Bar No. 90025922
                                           AMERICAN OVERSIGHT
                                           1030 15th Street NW, B255
                                           Washington, DC 20005
                                           (252) 359-7424
                                           Elizabeth.haddix@americanoversight.org

                                           *Counsel for Plaintiff*

28